We deal here today with a case that has been in existence, at least on paper, for twenty months, but throughout that period has been stayed. Throughout that period, our ability to pursue it or advance it in any way has been barred by a series of stay orders that have, without a word of explanation, gone to any defendant who sought one for whatever scope the defendant requested. We cannot know when those stay orders will end, but we can know, and do know, that they have already lasted for a period of time that courts have found intolerable, and that they won't end this year, or next year, or for some years to come. Indeed, they could easily extend until 2010, when, assuming no more bad acts on the part of defendants, state limitations periods for criminal actions will begin to end. The orders that we deal with are unprecedented and are far outside the range of any permissible discretion. The orders disregarded precedents that have consistently foreclosed indefinite stays. They disregarded precedents that, with very rare and unusual, or rare exceptions for unusual circumstances, have found stays for unindicted defendants to be unacceptable. They disregarded, the court that is, the orders have disregarded far less drastic alternatives, including a proposed protective order. The court has disregarded opposition papers, which we know, because in one of these orders, the second in the series of four orders, the court granted a series of, I believe, nine stay motions without waiting for opposition papers to reach the court. Now, when you say opposition papers, I saw in some of them, at least, or one of them, at least, that the court had all of your papers and was satisfied that you didn't make out your objections to a stay, and he didn't wait for the other side to respond to what you said. In the second order, Your Honor, there were two motions that had crossed. The defendants, or another series of defendants, made a motion for stays. And as to that, the order was granted before we had an opportunity to submit opposition papers. We had submitted – I'm sorry. Then your answer is that you're complaining that he did not wait for your papers. And with respect to a motion for reconsideration, that was rejected, and any deliberation with respect to a protective order that was addressed there was rejected without waiting for papers from the other side. So, yes – What do you mean, the other side? Your opponent? You asked to reconsider, and the judge decided, no, he didn't need to reconsider. He was right the first time, without waiting for their papers. I mean, that's clearly – In the second – It's exactly what we do in our court. In the second – You know, where we issue a decision, the losing party comes in, asks for re-hearing, and we don't normally require the prevailing party to tell us we were right before denying the petition for re-hearing. What's wrong with doing that in the district court? What's improper about it – well, first, we're here more with the substance than the procedure that led to it. What's particularly egregious in this case is that the court entered four stay orders, immunizing 31 defendants from any obligation whatsoever in the civil court, and did so without even once, on the first order or at any other time, explaining the rationale for doing it, or indicating that it followed the balancing test that had been imposed upon it. It's not only a drastic form of relief, it's an unprecedented form of relief, and one that we do think called upon the district court to give some rationale for doing so. That argument I understand, yes. The orders in this case, Your Honor, let me take them in sequence. The very first order that was granted stayed the case as to seven defendants, none of whom had been indicted then, none of whom had been indicted at any time since, who therefore have never been answerable for their actions either in a criminal case or in the civil action, and who have effectively been immune from any recovery effort to date, to date, 20 months after the stay that you are willing to concede would be entitled to a stay? No, Your Honor, there are not, in fact. With respect to those people who have been indicted, which there are very few, this court's opinions in Keating and Molinaro make plain that there's nothing improper, and indeed it's fairly routine, to allow civil actions to go forward against even indicted people side-by-side with criminal cases. So it's our position, and I think it's borne out by those cases, that those people who have been indicted are not entitled to stays. They are entitled to invoke the Fifth Amendment so as to vindicate their right not to testify against themselves, but that can't be extended into an immunity from civil action. It can't be extended in a civil action beyond the realm that it occupies in a criminal case to say, not only need I not testify, but I could stop you from getting any evidence from people who are willing to testify, or from people who have no Fifth Amendment right, or to get documents from corporations, and documents that are otherwise not protected. So, as to indicted defendants, I'd have to say, no. They have no right to so unbalance the system that their Fifth Amendment interests absolutely demolishes and destroys the interests of the defendants. It's pretty clear there are a number of cases in which courts have issued stays for persons who had been indicted but had not pled. You have two different classes of people who have been indicted, those who pled guilty and those who have not. We have people who have pled guilty. One of those, the highest up in the pyramid, has in fact not only pled guilty and given a lengthy allocution, but has obligated himself to fully cooperate with prosecutors and answer any questions that the FBI or the district attorney or any other law enforcement person may have. It's really inconsistent in the civil action to say that here we can't ask questions that he's obligated, in fact, to speak freely about to prosecutors and has done so. Where people have been indicted, there may be circumstances in which a brief stay makes sense and is consistent, again, with a balancing of the interest of the other side. But when a person has had, say, the ability to consult with criminal counsel and so to make an informed decision about whether to invoke or to waive his Fifth Amendment right and is then permitted to act in accordance with that consultation and that decision, Fifth Amendment rights are vindicated. And to go beyond that, I think, unbalances the interest of the defendants and the victims. There may be cases where simply because of conflicts and activity on two fronts, if a defendant is engaged in defending himself in a criminal trial, where events against him in the civil action might well be stayed temporarily. But criminal defendants, as other defendants, have no right to stay in action against them for more than a brief period of time, certainly not for the indefinite period of time that the stays have been imposed here. If the district court issued a stay for persons who have been indicted and not pled, you are perfectly free to come back in six months from now and say, Your Honor, gee, we'd like to revisit this, or could we at least have a status conference on this, because it may be that we've got some folks who have now moved out of that status and have pled guilty or are moving forward to trial. The fact that the stay has been issued doesn't prevent you from coming back in and asking the judge to dissolve the stay because there's been a change in circumstances, right? Well, the fundamental definition of the stay that exists now is one that precludes it from expiring for years to come. The definition of the stay that's been entered says that it shall remain in effect pending the resolution of any criminal investigations and or prosecutions that may arise in connection with the act's alleged and plaintiff's complaint. That was the first order. The second order has a slight difference of wording, but much the same. The second, the third, and ultimately, I believe, the fourth order stayed the action pending the resolutions of any criminal investigations and or prosecutions that have arisen in connection with the act's alleged and plaintiff's complaint. So in a period in which there's been relatively little action on the criminal front, we have been fixed in position, our feet in cement, for over 20 months, and we're looking at a definition which, by its terms, will go for additional years. Now, the district court has clearly ... You're perfectly free to come in and tell the district court there's been some changes in the circumstances, right? Ah. We've come in to the district court on four separate occasions, and those occasions where we've had the opportunity to put in opposition papers, as well as in our motion to re-argue, and tell the court that for various reasons, his stays are improper now. That people have ... That people, to take the first step, have absolutely no entitlement under any decision to a stay at all. The court has made it plain that it is not in the least bit inclined to modify these stays. It's not in the least bit inclined to do anything other than re-ratify it each time the issue is before it. I don't think there's ever been more of a record of a district court indicating an unwillingness to deviate from an absolute and indefinite stay. It's issued orders to that effect four times. It's declined re-argument. It's issued the fourth one, even after opening appellate briefs here, and has apparently been wholly uninfluenced by the request by this court for papers on the mandamus petition. So, we find ourselves in a situation where the district court has done everything the district court could possibly do to tell us that things are not going to change. Did the court issue stays to some defendants who it was conceded by both sides were not under investigation, nor subject to criminal prosecution? I don't know that defendants have conceded that they weren't under investigation. I think to a large extent it's unknowable. Certainly, there are a great many defendants here who have not been indicted. As far as I know, no specific action has been taken to indicate that they're about to be. It appeared to me that in some of the subsequent waves that the justification for the later stays was that the defendants couldn't gain complete discovery because earlier stays had been issued as to some defendants, and that would be an obstacle to them obtaining discovery and defending the case. Do you remember confronting that argument in the district court? I do recall that argument being there. I thought that argument was somewhat backwards. I think the answer to that is that the answer for limited discovery and the problems that entail can't possibly be to eliminate all discovery. In so doing, simply move the process down the road until we get to the point where these limitations periods on the criminal side begin to expire. This is one of, in fact, two or three realms in which the orders here turn things upside down. By saying that this stay is going to be in effect for so long as the investigations continue, something which is unknowable, but at the present rate will go for years, will go beyond the ordinary statute of limitations for our kind of case and out to lengthy six-year statutes for criminal cases, the court's saying that you victims, you victims are going to be held in check until we get to the end of a limitations period that normally indicates when things should all be done. And when you get to that period in which the legislature, by enacting those dates, has effectively decided the case has become stale, it's too difficult to fairly present one side or another, that's when you can begin to try with whatever evidence may be left against whatever defendants may still be in the jurisdiction. That turns it upside down. So the argument that we can have only limited discovery now is a reason for putting everything off to later is backwards. Let's get whatever evidence we can while it's fresh. There are a great many witnesses out there who have no Fifth Amendment concerns. There are patients, there are third parties, there are corporations with no Fifth Amendment interest to start with. How can we know the length of the relevant statute of limitations in the criminal case if we don't know exactly what offenses are being contemplated or what offenses ultimately will be charged? Well, we know minimal statutes of limitations for fraud, for tax evasion. We know that in state cases in California, the statutes for fraud can go up to six years if it's a type of fraud for which incarceration, I believe, could exceed eight years. And the agreement with... But they're longer under federal law for taxes, right? I believe they're at least six years for taxes, and then you have various tolling limitations. The point is not to know how far it could possibly go because the 20 months we've been held in check and the year or years we will be held in check are already an intolerably long period. The cases that say you cannot impose an indefinite stay and define that as a stay until the end of some other action speak with horror about the prospect of another action going on for possibly 18 months. Or speak in terms of the horror of a civil action being kept in limbo for perhaps years. Well, we're here. We're at that horror point, and it's getting more horrible day by day. And the prospect of waiting for additional years until the end of a limitations period to start gathering evidence is just...is exactly the kind of horror that we're dealing with. Or worse than the kind of horror that these other cases have to deal with. Moreover, the notion that you can get a stay as some type of reward for engaging in conduct that's not merely tortious, but is of a criminal nature. And not simply of a criminal nature technically, but of a nature that could well entice a prosecutor to take action. To notice the notion that the reward for that can be an immunity in civil actions that no one else gets is itself a perversion of the law, and particularly with respect to the RICO law that we're dealing with here. RICO was enacted to give a strong remedy to victims of serious crime. By definition, whenever a civil plaintiff seeks to invoke that remedy, if he does it properly, if the case is well brought, if there are predicate acts, we deal with situations where, indeed, defendants could face criminal liability for whatever it is we're seeking to prove here. So if that were grounds for issuing a stay, we have a situation where RICO actions could go unimpeded when you're dealing with garden variety cases that aren't going to entice a prosecutor to take action. But that when you're dealing with exactly the kind of case that RICO was meant to deal with, a case that we're dealing with here, where one of the defendants has said that he's generated through one lab, through one, I'm sorry, through one clinic, $90 million in fraudulent claims, and did it by paying people to come in and go under the knife. You have about two minutes left. Do you want to save any time for rebuttal? I would, Your Honor. Two minutes left, I'll save that. Thank you. Good morning, Joel Douglas for Dr. Chun. What we're going to do is we're going to do some tag team things. I've been selected to go first. I had an epiphany while driving here to court after reviewing the different briefs, and it concerns whether or not this is an appeal to writ, and I believe it is a significant distinction. Obviously, there's no statutory right to appeal from a stay order, and stays are traditionally reviewed by way of writ. And of course, there's that big argument that goes on in both of the briefs, both the brief on the writ and the brief on the appeal, whether or not this should be treated as an appeal, as an exception. And we've got cases viewing, approaching things differently. What is an appropriate delay? Does it become an injustice? And it occurred to me that what all of these cases that talk about whether or not a review of a stay should be done by an appeal, they're all really talking about the sort of stuff that is reviewed more appropriately on a petition for writ, where there's an injustice, an exception that needs to be made in a given case. And I would submit that by looking at the Cohn and the Cohn case, and reading what those courts are talking about, and looking at the other cases that have come down, you will basically find that what the issue is is whether or not in a particular case, under a particular set of circumstances, there should be appellate review by way of writ. And I think that would be the more appropriate way of looking at this. And one more thing. The advantage of doing that, of course, is that if everybody that wants to challenge a stay does it by an appeal, we don't get to the real questions until you're here in court. By a petition for writ, the allegations are laid out, the exceptional circumstances are laid out, the clear abuse, the irreparable harm is laid out, the injustice is laid out. And that could be vetted on a petition early on as to whether or not it should go forward. Let me ask you a question about the merits. The briefs, the defense briefs, have variously characterized the stay as one with clear limits. What are the clear limits here? Well, certainly, the clear limit that the court laid out is when the criminal prosecution is over. Or investigation. Or investigation is over. Why would anyone expect that either the state authorities or the U.S. Attorney are going to announce that the investigation is over? It seems to me that that rarely, if ever, happens. We've got a direct pipeline between the blue plaintiffs and the criminal prosecutors. And we know very clearly, because it's been very clearly set forth, what investigation is going on. And we've got criminal prosecutions going on. I think it could be reasonably well ascertained when those are over. Also, you've got a limitation by way of the statute of limitations as to when those cases come to an end. And I think there are some limitations. Plus, as this court has pointed out, we're only reviewing what was before the trial court at the time this was made. It doesn't change a change of circumstances where we look at the balancing may be different at a later point in time. It's not for us at this point to try to speculate what may or may not happen in the future. We know there's a trial that's supposed to start in federal court in February. February 2007. I don't understand, though, how assumptions can be made on the basis of statutes of limitations when it seems to me none of the civil parties is aware exactly of what crimes are under investigation or what the applicable statutes of limitation may be. They may be longer than five years in the case of federal tax laws, for example. How can it be said that there's a clear limit on this day? This is about abuse of discretion. When it comes to the Fifth Amendment constitutional right, I agree, you don't always get a stay. Sometimes there could be use of immunity. Sometimes you just assert your right. There's always a potential of something, of being sued. But that balance, that goes down low on the list of being sued for tax evasion is very low on the list. What is imminent and what is before the trial court here and what we're viewing is several full-fledged criminal investigations at both the federal and the state level. Threats that you're going to be indicted, and we even had counsel here in court say the fact that they haven't been indicted, don't hold your breath. They're brandishing these criminal things. You've got close to three dozen defendants being threatened civilly and criminally, and we've got now the plaintiff, civil plaintiffs, working with the criminal people, including discovery. As a matter of fact, in one of the first motions, they attached articles with the FBI agent saying, yeah, the Blue Cross plaintiffs are providing us information, providing us discovery. That's what this is all about. I wanted to go, because I do want to share my time with my colleagues, but there's several other little platforms I want to make before I step down. This is about abuse of discretion. That's the standard of review. The plaintiffs say it's de novo review. I remember, to me, de novo review is when you interpret a contract, you interpret constitutional law. This is about whether or not the trial judge, faced with a variety of factors, 36 defendants or whatever the number are, several criminal prosecutions that are vetting the same issue, and all these threats, the worry about constitutional rights, it's about did this trial judge clearly abuse his discretion? Not whether or not you or I may think differently or would have done something differently, but whether or not Judge Hatter clearly blew it, was off the earth, and that's hardly the case here. And we need to support the trial judges, because look what's happening already. Counsel, how are we supposed to know what Judge Hatter had in mind? I know what he did. Absolutely. And we also know what is before us in papers, in logic, in reason. It doesn't take — yes. But, Counsel, that can be said of any case that comes before us in which counsel has presented arguments. The district courts issue findings in support of their judgments. But in an appellate review on an abuse of discretion standard, you give the deference to the trial court. All intendaments and presumptions are in favor of supporting the ruling, particularly when the record is replete with all sorts of good reason for what the trial judge did. Counsel, we often see cases that have an abuse of discretion standard. But if we have no idea why the district court did what he did, how are we supposed to tell whether he's abused his discretion or not? I guess we could take the position — first of all, no request for findings affecting conclusions of law were made. So if there was a question about why the trial court acted the way the trial court acted in the face of all the pleadings and briefing, as well as common sense and inferences that flow from it, if there's still a legitimate question, there was no request for findings affecting conclusions of law. We don't — obviously, I'm not sitting where you folks are. But it seems to me that we need to use a rule of reason, too, a rule of common sense, looking what's out there and looking what are the factors that are obviously facing Judge Hatter. And the pleadings are replete with this. The arguments that were advanced in the pleadings, the circumstances, make it very clear that the trial judge had a number of factors to weigh, including an unworkable protective order. There's no way this could have been workable with — it would be inviting multiplicity of litigation, piecemeal litigation, inconsistent results, some defendants talking, some not talking, some holding on to evidence. It's just not a workable system. When you have several criminal cases that are on the same area, that are vetting the same issues, that will help clarify things, create focus, create clarity, perhaps maybe even make a civil suit unnecessary. It's still up to the plaintiffs whether or And this is — remember, this is not a single tort. This is a RICO conspiracy involving multiple conspiracies, all within a scheme, all involving the same people. You just can't break this apart. And out of respect to my colleagues, and with the Court's permission, let me let my colleagues — I did have more things to say, but I don't want to trump their opportunity. Thank you, Judge. Thank you. Good morning, Your Honor. Tracy Green for Defendants Mitchell Rubin, Stephen Rubin, Daniel Rose, M.D., Anaheim West Outpatient Surgery Center, St. Francis Outpatient Medical Center, and Ochre County Clinics. And I'd like five minutes, Your Honor, and reserve the rest of the time for the other counsel. When the District Court was faced with this case, at that point in 2005, there was already one pending federal case. There was already one pending state case. My clients had been — were the subject of a search warrant in state court. And the plaintiffs who are the victims in the case — the plaintiff appellants who are the victims in the case — there were three defendants alleging three separate RICO enterprises. They could have chosen to divide the case more clearly, with each enterprise separate, and make it a more manageable case. But not only did they allege the three separate RICO enterprises, they also alleged that everyone who was a co-conspirator of the other created a very difficult case when you have multiple defendants. There are now 24 individual defendants related to those three medical clinic enterprises that have been indicted. They've named 50 total defendants. So we have a situation where a trial court was faced with a situation of what they're going to do when certain defendants assert the Fifth Amendment and other defendants are going to have the difficulty of either taking their deposition or, if they themselves decide to go ahead and assert the Fifth Amendment, fight evidentiary sanctions and the like that's going to happen in a civil case. The appellants are free to go back to the district court and sever out certain defendants, indicate who has already pled guilty. They can adjust their civil case accordingly. They bear a good portion of the responsibility for why the case is in the situation that it is. With respect to cooperating defendants, certainly no government entities, for example, the FBI, the health care fraud investigators in the state court, are going to want the defendants' appellants or appellees' appellants, excuse me, to be able to use the civil discovery in order to conduct civil discovery for the criminal defense. Now, although all those reasons are now set forth in Judge Hatter's decision, it can certainly be inferred that all of those and the reasons set forth in the brief are logical reasons to support his order. Did the court have any other questions with respect to when the state could be released as to certain defendants versus other defendants? One of the concerns that the individual defendants have is having a victim participate fully in the investigation, be part of the criminal process, and then decide to file a federal RICO lawsuit using the threat of the criminal case in order to advance their civil case. If the appellants want to dismiss out certain defendants, refile, certainly if the statute of limitations is pending on the criminal side, they would be able to refile either in state court and federal court and pursue their interest. For appellants to say that the statute of limitations will at least go to 2010, that depends on the individual defendants. It is possible for the appellants to go and seek an agreement by the government to either give immunity to certain defendants or that certain individuals are not a target of the investigation. But haven't you argued that that wouldn't matter anyway? Some of the defendants have taken the position that because they can't get discovery from other defendants who have been indicted or have clearly identified as targets of criminal investigations, that that alone justifies a stay as to those non-suspected defendants. Their inability, in other words, to conduct full discovery as to all defendants justifies a stay as to them, even though they're not under suspicion. And that's the position that's replete in the briefs that I read. Well, that's part of the situation that's been created by the Blue Cross plaintiffs, appellants in this case, by claiming three RICO enterprises but still alleging that all of them are co-conspirators. Perhaps if they agreed to stipulate and amend their complaint so that every one were not a co-conspirator of the other, it would lessen that problem. So I don't think that they can plead those allegations and then complain when the ramifications occur when you've got the pending criminal cases. Yeah. With respect to what Mr. Douglas had argued about before with respect to this being appropriate case for a writ, certainly it's not an abstention case. The trial court did not defer to the State court or to the other Federal court. If anything, if the district court here had entered certain orders, they could have easily conflicted with the other Federal pending court case and could have conflicted with the other two pending State cases. I think that the district court looked at the entire situation, knowing how these cases proceed and what would happen, made reasonable determinations, understanding the complexity of the case, the difficult discovery issues, and that probably within a year or two, and with a couple of the criminal cases resolved and certain individuals pleading out, or either being acquitted or investigations being wrapped up, that at a certain point it would be in a better position to determine which individuals could go forward in the case and which could not. Appellants have never gone back to the trial court and asked for any type of clarification, have not filed any documentation indicating that certain individuals have pled, have not filed any statements regarding the 18 individual defendants that have defaulted. You've got less than four minutes. Did you want to leave time for that? Yes, I do, Your Honor. Thank you. Good morning, Your Honor. May it please the Court, I am George Rosenstock, and I am representing Drs. Rosenberg and Giggini. I think part of the problem that we're facing today has to be laid to the plaintiffs because of the humongous nature of the lawsuit. They have essentially pled the serpent from the head to the tail, and it was almost inevitable, given that this was in front of a trial court that did not require a RICO statement, that these complications would arise. You have classes of indicted defendants which were inevitable. You have defendants who have had search and rescue. And speaking, although I suppose somewhat embarrassingly it's been pointed out to me, some of the physicians have been asked to cooperate with the federal authorities, and discussions have gone on with respect to the nature of that discussion, queen for day immunity, this sort of thing, that the various gradient of potential targets here creates a situation which the plaintiffs have created, and which puts us in this situation where we are really on the razor's edge of making decisions with respect to the Fifth Amendment that are not illusory, they're quite real, and they are quite complex simply because of the number of people that have been brought into this web, or rather I should say net. And just to conclude the essence of this problem which all the defense counsels are really facing, if you look at the complaint, you see there are defendant doctors and there are non-defendant doctors. There's no bright line between which physician was supposed to backwardly infer that they were treating a patient who was coached as to what symptomology to present, and therefore they must have been in on that conspiracy. What you're facing are real decisions by real physicians with real careers who have to decide, well at one point am I going to not shield myself and be exposed criminally? So these practical decisions are not merely theoretical. And finally with respect to the piecemeal nature of the litigation, if you start lifting it as to class one, class two, class three, what you're going to have is litigation that could quite literally go on for seven or eight years as the various classes became exposed to potential civil litigation. And then the potential for inconsistent results is very real, and it's almost paralyzing. Issues of res judicata, collateral estoppel, the situation becomes completely unmanageable. And I believe that Judge Hatter saw that, and I believe that when you bring these humongous RICO causes of action, and you don't have to file a RICO statement, and you bring in this huge class of people that these problems are inevitable, and that the appropriate way to resolve it is to simply freeze it in its tracks, stay the litigation, and allow things to happen like convictions, settlement, and whatnot, so that the problem essentially solves itself. Thank you. Yes, Your Honor, just a couple points. For some reason, my adversaries have seen fit to attack the RICO pleading itself as the cause of the problem. I point out that the RICO pleading was tested on motions to dismiss, and the district court found that the RICO pleading was well treated. There was no problem with the RICO pleading. At the very same time, unfortunately, the court issued the first of a series of stay orders. Counsel, did you ask for findings of that conclusion to the law? No. Why not? It seems to us, Your Honor, that the governing law here doesn't permit any particular finding that would justify the stay under these circumstances. There's some black letter law that restrains the discretion that's available to district courts. Given the nature of our standard of review, it might have been useful to have had the benefit of the district court's thinking, and it might have also narrowed the rule, right? The district court had issued findings. Might it have narrowed the scope? Your Honor, I don't know what possible findings could have been rendered to justify the stay, nor was any evidentiary showing made to present any findings on. The only facts that were ever presented to the court was that a certain number of defendants had been indicted, and I must say a far smaller number than I believe it was Ms. Green stated to the court. Ms. Green stated that, I forget exactly how many people she said were indicted, but she failed to note that 14 of those indicted aren't defendants in this action, and the scheme for patient recruiters consist of people we have not sued at all. So the notion that a significant number of people have been indicted doesn't help. They don't happen to be people in this case. We have, I believe, a total of four individuals who are defendants in this case who have been indicted and who have not yet pled. I believe what's dispositive, just to come back to your question, is the fact that the operation really does have limits to it. It does have hard and fast boundaries, and that within that range, yes, perhaps there's some room for discretion, and perhaps there explanations would be beneficial, but outside that range, and the range we're talking about, the walls that apply here, are the hard and fast rules against indefinite stays, and this fits the definition of an indefinite stay, and the hard and fast rules against giving stays to unindicted defendants, and the rule that in case of indicted defendants, the court has to look for the least restrictive method of vindicating any Fifth Amendment rights, rather than the most restrictive. All of those rules place the court's action here outside the range of any options that were available to it. So we're not dealing with a situation where we're within a range of possible outcomes within the range of discretion. It's as if the judge acted or it's almost as if we're in beyond the jurisdiction of the court to do certain things. Kennedy. All right. Counsel, we're well over now. I'm sorry, Your Honor. I thank you for your attention and for the additional time. The case is arguably submitted. The court will stand on recess for the day.
judges: Reinhardt, Bybee, Burns